JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Joseph Saleh appeals the judgment of the trial court granting summary judgment in favor of defendant-appellee Marc Glassman, Inc. on Saleh's claims of respondeat superior liability and negligent hiring, retention and supervision. Saleh also appeals the judgment of the trial court granting defendants-appellees Curt Cangey, Phillip Cangey and Nancy Cangey's motion to dismiss based upon expiration of the statute of limitations. For the following reasons, we affirm the trial court.
 {¶ 2} This case arose from an altercation that occurred in the parking lot of the Great Northern Shopping Center at approximately 9:15 p.m. on October 18, 1999. Marc's is one of the stores located in the shopping center. Curt Cangey, as well as defendants Thomas Marchinko and Adam Mentzer, was an employee of Marc's. Phillip and Nancy Cangey are the parents of Curt, who was a minor at the time of the incident.
 {¶ 3} According to Saleh's deposition testimony, he and his three cousins Abraham, Ishmael and Abed Darwish, drove to Marc's, arriving at approximately 8:48 p.m., and stopped in front of the store.[1] Abraham and Ishmael went into Marc's, while Saleh and Abed remained in the car. Abraham returned to the car first, and Ishmael followed shortly thereafter.
 {¶ 4} Saleh testified that four male employees of Marc's had been standing outside the store holding baseball bats while Abraham and Ishmael were inside Marc's. The employees were standing near the store's entrance talking to each other. Two of them were sitting on shopping carts, while the other two were leaning against shopping carts. Eventually, two of the four employees went into the parking lot and collected shopping carts. The other two employees, one who Saleh described as wearing a fisherman's cap and the other who he described as weighing about 180 pounds, continued hanging around the entrance to the store, "goofing off." According to Saleh, the two employees who were "goofing off" began making racially derogatory comments to him and his cousin Abed.
 {¶ 5} When Ishmael exited the store and began walking toward the car, the employee wearing the cap followed Ishmael toward the car. At that point, Saleh got out of the car and urged Ishmael to get in. While doing so, the employee wearing the cap struck Saleh with a baseball bat, and then the employee who weighed about 180 pounds struck Saleh with a bat too. Saleh testified that when the altercation started, the two employees who had been collecting the carts were finished.
 {¶ 6} Saleh testified that he did not know any of the attackers. Ishmael, however, testified at his deposition that he did know them. According to Ishmael, he (Ishmael) was fighting with Curt Cangey; Saleh was fighting with "Tom;" and Abraham was fighting with "Adam." Further, when questioned about whether the employees were working prior to the fight, Ishmael stated: "No. Actually they weren't even working. They were sitting down. One guy was sitting down smoking a cigarette, and the other guy was standing there with his hands in his pocket." Ishmael also described who he believed provoked the fight:
 {¶ 7} "Honestly, I want to say Adam — I just — at that time I just honestly think it is because Tom does not like me. He has never liked me, and I overheard one day in school the reason why he didn't like me was because of the fact that I was Arab, but I never pursued that."[2]
 {¶ 8} During his deposition testimony, Abraham testified that the two employees who were not collecting the carts (i.e., the one with the fisherman's cap and the one weighing about 180 pounds and whom Saleh described as his attackers) were not doing anything. He further testified that the altercation did not have anything to do with the collection of shopping carts from the parking lot.
 {¶ 9} Similarly, Ahbed testified at his deposition that the employees were making faces, staring them down and using profanity at them, but none of that had anything to do with any problem relative to the collection of carts from the parking lot.
 {¶ 10} Saleh, Abraham and Abed all further testified that they believed the attack was intentional, rather than accidental.
 {¶ 11} An eyewitness described the incident as follows:
 {¶ 12} "4-5 [Arabs] pulled up in a white 4 door car. 3 Marc's employees were waiting for them [with] little bats. The car drove by once they yelled at each other. The car turned around came back. All of the males in the car (except one) jumped out the 3 Marc's employees charged them. They fought for about 2 minutes then the carload of 4-5 guys drove off."
 {¶ 13} Timothy White, the Marc's manager at the time of the incident, averred in his affidavit that Marc's employees generally performed their duties within the confines of the store. However, White averred that employees were occasionally assigned to work outside for the purpose of collecting the store's shopping carts from the parking lot. White explained that when an employee was assigned to do so, however, that was their only responsibility; they had no security responsibilities; they were not supplied with any equipment to perform their work ("Certainly they were not supplied with baseball bats"); and that if employees were involved in an altercation while collecting shopping carts from the parking lot, it was not in the course and scope of their employment with Marc's. Marc's relied upon White's affidavit in support of its motion for summary judgment.
 {¶ 14} In opposition to Marc's motion for summary judgment, Saleh relied upon Curt Cangey's answers to interrogatories, and Ishmael, Abraham and Abed's deposition testimony. In regard to Curt Cangey's answers to interrogatories, Saleh relied specifically on the following interrogatory and answer:
 {¶ 15} Interrogatory: "At the time of the incident referred to in Plaintiff's Complaint were you acting as agent, servant, or employee and/or acting in the course and scope of any employment, and if so, state the name and address of said principal, master or employer?"
 {¶ 16} Answer: "Yes. Marc's Great Northern, Lorain Road, North Olmstead, Ohio 44077."
 STANDARD OF REVIEW FOR SUMMARY JUDGMENT {¶ 17} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall, 77 Ohio St.3d 421, 430, 1997-Ohio-259,674 N.E.2d 1164. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler
(1998), 38 Ohio St.3d 112, 526 N.E.2d 798.
 {¶ 18} Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. Any doubts must be resolved in favor of the non-moving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-359, 1992-Ohio-95, 604 N.E.2d 138.
 RESPONDEAT SUPERIOR {¶ 19} The Supreme Court of Ohio set forth the standard for determining an employer's liability under the doctrine of respondeat superior in Osborne v. Lyles (1992), 63 Ohio St.3d 326, as follows:
 {¶ 20} "The doctrine of respondeat superior is expressed in the Restatement of the Law 2d, Agency (1958) 481, Section 219(1), which states as follows: `A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.' Ohio law provides, `[i]t is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must be calculated to facilitate or promote the business for which the servant was employed * * *.' (Citations omitted.) Byrd v. Faber (1991),57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587. In general, `an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor. * * *' (Citations omitted.) Vrabel v. Acri (1952),156 Ohio St. 467, 474, 46 O.O. 387, 390, 103 N.E.2d 564, 568. Stated otherwise, `an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business.'Byrd, supra, 57 Ohio St.3d at 59, 565 N.E.2d at 588." Osborne, at 329-330.
 {¶ 21} Upon review, we find that there is no evidence in this case that the individuals who assaulted Saleh were "on the clock" and acting in the course and scope of their employment with Marc's at the time of the incident. Saleh's own testimony was that when the incident started the two employees who had been collecting carts were finished with that task. Further, the employees who Saleh described as his attackers had never been involved in the collection of the shopping carts; Saleh testified that they had just been "goofing off." Moreover, all three cousins also testified that the altercation did not have anything to do with the collection of the shopping carts from the parking lot.
 {¶ 22} We do not find persuasive Saleh's argument that because the employees were wearing their Marc's work shirts when the incident occurred they were "on the clock." As White, the Marc's manager, explained, employees wear their shirts to and from work; they are not required to keep them on the premises. Thus, the fact that the employees had their work shirts on only establishes that they were Marc's employees, a fact that was not in dispute.
 {¶ 23} Finally, in regard to Saleh's reliance upon Curt Cangey's interrogatory answer, Ishmael testified at deposition that he knew the assailants and that he (Ishmael) was fighting with Curt Cangey. Saleh, on the other hand, testified that he did not know any of the assailants and, thus, was unable to identify them by name.
 {¶ 24} As such, we find that the trial court properly granted Marc's motion for summary judgment as to Saleh's respondeat superior liability claim, and Saleh's first assignment of error is without merit.
 NEGLIGENT HIRING, RETENTION AND SUPERVISION {¶ 25} This court set forth the elements for a negligent hiring, retention and supervision claim as follows:
 {¶ 26} "The party seeking to prevail on a claim for the negligent hiring, supervision, and retention of an employee by an employer must show: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as a proximate cause of plaintiff's injuries * * *
 {¶ 27} "An employer may be negligent if he knew, or should have known, that his employee had a propensity for violence and such employment might create a situation where the violence would harm a third person * * *. In the absence of a known criminal propensity, a criminal act by an employee is not reasonably foreseeable." Steppe v. K-MartStores (2000), 136 Ohio App.3d 454, 465-466.
 {¶ 28} In order to maintain a claim for negligent hiring, supervision and retention, the threshold issue of whether the employee was "on the clock" when the criminal or tortious act was committed must be established. See Gebhart v. College of Mt. St. Joseph (1995),106 Ohio App.3d 1; Malone v. Miami Univ. (1993), 89 Ohio App.3d 527;Evans v. Ohio State Univ. (1996), 112 Ohio App.3d 724.
 {¶ 29} As already discussed, we find that the employees were not "on the clock" at the time this incident occurred. Moreover, we also find that there is no evidence in the record that the employees had a prior history of criminal or tortious behavior or that Marc's knew or should have known of any such prior history.
 {¶ 30} Accordingly, the trial court properly granted Marc's motion for summary judgment as to Saleh's negligent hiring, supervision and retention claim, and Saleh's second assignment of error is without merit.
 CANGEY'S MOTION TO DISMISS {¶ 31} In his third and final assignment of error, Saleh contends that the trial court erred in dismissing Curt, Phillip and Nancy Cangey's motion to dismiss, which was based upon the expiration of the statute of limitations.
 {¶ 32} Civ. R. 12(B)(6) provides the trial court with an opportunity to review the complaint and avoid unnecessary delay if it determines, construing as true all the material and allegations in the complaint, and all reasonable inferences be drawn therefrom, in favor of the non-moving party, nevertheless finds the plaintiff could prove no set of facts in support of his or her claim that would entitle him or her to relief. SeeHester v. Dwivedi, 89 Ohio St.3d 575, 2000-Ohio-230, 733 N.E.2d 1161. (Citations omitted.) The trial court's review is limited to the complaint.
 {¶ 33} Our standard of reviewing a trial court's dismissal pursuant to Civ. R. 12(B)(6) is de novo, because it presents a question of law.Greely v. Miami Valley Maintenance Contrs. Inc. (1990), 49 Ohio St.3d 228,551 N.E.2d 981. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,65 Ohio St.3d 545, 1992-Ohio-73, 605 N.E.2d 378. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. Byrd v. Faber, supra.
 {¶ 34} Saleh's complaint alleged that Curt Cangey "negligently and/or intentionally assaulted" him, and that Curt and his parents, Phillip and Nancy Cangey, were liable for his injuries. In their motion to dismiss, the Cangeys argued that Saleh's claim was one for assault pursuant to R.C. 2305.111, which provides a one-year statute of limitations. In opposition, Saleh argued that his claim was subject to the two-year statute of limitations for negligence set forth in R.C. 2305.10.
 {¶ 35} In Love v. Port Clinton (1988), 37 Ohio St.3d 98, the Supreme Court of Ohio addressed this very issue about the governing statute of limitations in cases such as this one:
 {¶ 36} "Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence. To hold otherwise would defeat the assault and battery statute of limitations. Nearly any assault and battery can be pled as a claim in negligence. We agree with the court in Grimm v. White (1980),70 Ohio App.2d 201, 203, which recognized that: `* * * [T]hrough clever pleading or by utilizing another theory of law, the assault and battery cannot be [transformed] into another type of action subject to a longer statute of limitations as it would circumvent the statute of limitations for assault and battery to allow that to be done.'" (Parallel citations omitted.) Love, at 99-100.
 {¶ 37} The primary cases cited by Saleh in support of his argument that he properly pled a negligence cause of action are distinguishable from this case. Buechner v. Sargent (Dec. 1977), Hamilton App. No. C-76705, involved a negligence cause of action against a bar for an alleged breach of the bar's duty to exercise ordinary care to protect its guests from an assault and battery by another patron. In addressing that issue, the court held:
 {¶ 38} "* * * [T]he essence of the action is the breach of the tavernkeeper's duty to his patron, a right wholly separate from that specific duty to avoid inflicting an intentional injury to his person owed him by the guest Combs. The former action is clearly one for bodily injuries under the two year statute, R.C. 2305.10, while the latter is equally clearly governed by the specific limitation governing assaults and batteries, R.C. 2305.[111]." Buechner, at ¶¶ 3-4.
 {¶ 39} Likewise, Forsythe v. Conatser (May 21, 2004), Montgomery App. No. 19989, is distinguishable. In that case, the plaintiff filed a complaint alleging that the defendant had negligently or intentionally struck him with his pickup truck. According to the police report, the plaintiff reported that the defendant had swung his truck door open, banging it into the plaintiff's knee, then swerved, hitting the plaintiff with his truck and running over his foot, as he drove away. During his deposition, when asked whether he believed the defendant had hit him with the door intentionally, the plaintiff indicated that he was unable to answer with certainty. He reiterated how his injuries had occurred but, as with the police report, he did not express a clear opinion about whether the defendant had intended to hurt him. Moreover, the plaintiff testified at deposition that the defendant had appeared to be confused about whether his truck was in drive or reverse. In fact, his testimony was that he was "99 percent sure" that the defendant had thought that his truck was in drive when it went backward and hit him.
 {¶ 40} In this case, looking beyond the face of Saleh's complaint, we find that the allegations were based upon intentional conduct. Saleh, Abraham and Abed all testified that they believed the Marc's employees intended the altercation as opposed to it occurring negligently. Further, the eyewitness account did not describe a negligent occurrence ("* * * the 3 Marc's employees charged them.") Moreover, the circumstances just prior to the attack (i.e., the Marc's employees staring Saleh and his cousins down and shouting profanities and racial slurs at them) suggest that the employees' actions were intentional.
 {¶ 41} As such, Saleh's action against the Cangeys was governed by the one-year statute of limitations for assault and battery set forth in R.C. 2305.111, the trial court properly granted the Cangey's motion to dismiss, and Saleh's third assignment of error is without merit.
 CONCLUSION {¶ 42} Having found that the trial court did not err in granting Marc's motion for summary judgment and granting the Cangey's motion to dismiss, the judgment of the court is affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J., and Kilbane, J., Concur.
[1] The store closed at 9:00 p.m.
[2] Saleh's three cousins and the four Marc's employees were students at North Olmsted High School.