OPINION
{¶ 1} Plaintiff-appellants, Sheila Forrest, individually and as executor of the estate of James E. Forrest, and Eyad Suleiman appeal the decision of the Warren County Court of Common Pleas granting summary judgment to defendants-appellees, Glenview Golf Course ("Glenview"), Kemper Sports Management ("Kemper Sports"), Cincinnati Concession and Catering Co. ("Cincinnati Concession"), and TSS Technologies, Inc. ("TSS"). We affirm.
 {¶ 2} The record reveals the following facts relevant to this appeal: The Cincinnati Recreation Commission owns Glenview. Kemper manages and operates Glenview on behalf of the Commission. Kemper employs Cincinnati Concession to provide concessions and catering services at Glenview. Cincinnati Concession holds an Ohio liquor permit for the Glenview premises.
 {¶ 3} On July 24, 2001, TSS contracted with Kemper Sports to hold a company golf outing at Glenview on September 7, 2001. TSS also contracted with Cincinnati Concession to provide dinner, beer, and soft drinks for the outing. Holly Leitz, the Human Resources Director at TSS, organized the outing. On the date of the event, Cincinnati Concession placed the provided beer in coolers and transferred it to Leitz. During the golf portion of the event, the beer was distributed to TSS employees through a ticket system. The employees were each given five tickets, which they exchanged for cans of beer.
 {¶ 4} Randy King was a TSS employee who worked as a welder at TSS's plant in Fairfield. He participated in the company golf outing at Glenview. On the day of the outing, King left work early and went to Hooter's restaurant, where he ate lunch and drank less than one beer. He then went to Glenview, where he received five beer tickets and played golf. During golf, King received beer for his five tickets from a TSS employee nicknamed "Puffy." Puffy drove a golf cart around the course during the round and gave beer to the TSS employees in exchange for their tickets.
 {¶ 5} At the dinner portion of the event, the employees were permitted to consume beer without regard to tickets. King drank a portion of one more beer at dinner, then left Glenview and headed home. On the way home, King, who admitted that he was driving under the influence of alcohol, was involved in a motor vehicle accident with James Forrest and Eyad Suleiman. Forrest was killed in the accident and Suleiman was injured. In the aftermath of the accident, three separate lawsuits were filed. State Farm Mutual Insurance Co. ("State Farm") filed suit against King in May 2003, and in September 2003, Sheila Forrest and Suleiman filed separate suits against King and appellants herein. On November 24, 2003, the trial court consolidated the three cases under the lawsuit filed by State Farm.
 {¶ 6} This appeal concerns the claims of negligence and violations of Ohio's Dram Shop Act, R.C. 4399.01 et seq. that Sheila Forrest and Suleiman alleged against TSS, Glenview, Kemper Sports, and Cincinnati Concession. On February 12, 2004, TSS filed a motion to dismiss these claims, which the trial court converted to a motion for summary judgment and granted on May 10, 2004. Cincinnati Concession, Glenview, and Kemper Sports filed motions for summary judgment in December 2004, which the trial court granted on January 13, 2005. This appeal followed.
 {¶ 7} On appeal, Forrest raises the following sole assignment of error:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFA-PPELLANT IN GRANTING SUMMARY JUDGMENT AND PARTIAL DISMISSAL IN FAVOR OF DEFENDANTS TSS TECHNOLOGIES, CINCINNATI CATERING, GLENVIEW GOLF AND KEMPER SPORTS."
 {¶ 9} Suleiman raises the following four assignments of error:
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN DENYING HIS MOTION TO AMEND HIS COMPLAINT TO MIRROR THE ALLEGATIONS OF PLAINTIFF FORREST ALLEGING RESPONDEAT SUPERIOR AS TO DEFENDANT TSS TECHNOLOGIES FOR THE REASON THAT: LEAVE SHOULD BE FREELY GRANTED TO AMEND A PLEADING WHEN JUSTICE SO REQUIRES PURSUANT TO OHIO CIV.R.15."
 {¶ 12} Assignment of Error No. 2:
 {¶ 13} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN GRANTING PARTIAL SUMMARY JUDGMENT TO DEFENDANT TSS TECHNOLOGIES, FOR THE REASON THAT: SUMMARY JUDGMENT WAS GRANTED WHEN MATERIAL QUESTIONS OF FACT WERE PRESENT REGARDING TSS' VICARIOUS LIABILITY FOR SERVING ALCOHOL TO A NOTICABLY INTOXICATED PERSON."
 {¶ 14} Assignment of Error No. 3:
 {¶ 15} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN GRANTING PARTIAL SUMMARY JUDGMENT TO DEFENDANT CINCINNATI CONCESSION AND CATERING, FOR THE REASON THAT: SUMMARY JUDGMENT WAS GRANTED WHEN MATERIAL QUSTIONS OF FACT WERE PRESENT REGARDING CINCINNATI CONCESSION AND CATERING'S LIABILITY FOR SELLING, SERVING AND/OR DISTRIBUTING ALCOHOL TO A NOTICEABLY INTOXICATED PERSON."
 {¶ 16} Assignment of Error No. 4:
 {¶ 17} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS (SIC) IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS GLENVIEW GOLF COURSE AND KEMPER SPORTS MANAGEMENT, FOR THE REASON THAT: SUMMARY JUDGMENT WAS GRANTED WHEN MATERIAL QUESTIONS OF FACT WERE PRESENT REGARDING DEFENDANTS GLENVIEW GOLF COURSE AND KEMPER SPORTS MANAGEMENT."
 {¶ 18} Forrest's single assignment of error and Suleiman's second, third, and fourth assignments of error concern the trial court's decision to grant summary judgment in favor of appellees. Because all four assignments of error raise similar issues, and for ease of analysis, we will consider them together.
 {¶ 19} Forrest and Suleiman first contend that the trial court erred in granting summary judgment to appellees because they were not given adequate time to conduct discovery. Specifically, appellants contend that they were not given enough discovery time to depose several key witnesses. The depositions, appellants contend, would have given them the facts needed to adequately oppose appellees' motions for summary judgment.
 {¶ 20} Civ.R. 56(F) permits a party to request additional time to obtain through discovery the facts necessary to adequately oppose a motion for summary judgment. The rule provides:
 {¶ 21} "Should it appear from the affidavits of a party opposing [a] motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 22} A party seeking a Civ.R. 56(F) continuance has the burden of establishing a factual basis and reasons why the party cannot present sufficient facts to justify its opposition without a continuance. Glimcher v. Reinhorn (1991), 68 Ohio App.3d 131,138. Whether a party has met that burden is a question of discretion. Accordingly, a trial court's denial of such a motion shall not be reversed absent an abuse of discretion. Galland v.Meridia Health System, Inc., Summit App. No. 21763,2004-Ohio-1416, ¶ 6. A court does not abuse its discretion unless its decision is arbitrary, unreasonable, or unconscionable.State v. Adkins (2001), 144 Ohio App.3d 633, 644.
 {¶ 23} Neither appellant submitted a request for more time to conduct depositions of additional witnesses pursuant to Civ.R. 56(F). The record reveals Forrest requested, and received, a continuance under Civ.R. 56(F) in April 2004. The continuance was granted to give Forrest time to properly authenticate a statement by King in order to adequately oppose TSS's motion for summary judgment. The record also reveals both appellants requested, and received, additional time to file responses to the motions for summary judgment granted to Cincinnati Concession, Kemper, and Glenview in January 2005. Neither party, however, submitted a Civ.R. 56(F) request for more time to take additional depositions in order to adequately oppose those motions.
 {¶ 24} Seven months elapsed before TSS was dismissed from the case, and more than one year elapsed before judgment was granted in favor of Glenview, Cincinnati Concession, and Kemper. Given the length of time between the filing of the complaint and the granting of summary judgment, and given the absence of a proper Civ.R. 56(F) request for more time to conduct depositions, we do not find the trial court abused its discretion in the discovery process when ruling on the motions for summary judgment.
 {¶ 25} We now turn to appellants' contention that the trial court erred in granting summary judgment in favor of TSS, Cincinnati Concession, Glenview, and Kemper.
 {¶ 26} Summary judgment is appropriate when the following have been established: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can only come to a conclusion adverse to the non-moving party. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66. When reviewing a motion for summary judgment, the lower court and appellate court utilize the same standard; we review the judgment independently and without deference to the trial court's determinations. Burgess v. Tackas (1998), 125 Ohio App.3d 294,296.
 The decision to grant summary judgment in favor of TSS {¶ 27} The trial court found from the facts properly before it that TSS was a social host of the outing at Glenview on September 7, 2001. Finding no genuine issue of material fact regarding TSS's status as a social host, the trial court concluded, as a matter of law, that Ohio does not impose liability upon social hosts for the negligence of their intoxicated guests. For the reasons that follow, we agree with the findings and conclusions of the trial court.
 {¶ 28} R.C. 4399.18, part of Ohio's "Dram Shop Act," provides:
 {¶ 29} "A person has a cause of action against a permit holder or an employee of a permit holder for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control * * *" when the permit holder or employee knowingly sold an intoxicating beverage to "[a] noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code."
 {¶ 30} R.C. 4301.22(B) provides: "No permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person."
 {¶ 31} In Settlemyer v. Wilmington Veterans Post No. 49,American Legion, Inc. (1984), 11 Ohio St.3d 123, the Ohio Supreme Court addressed the issue of who could be held liable under the Dram Shop Act. In that case, the executor of the estate of James Cox sued the American Legion Veterans Post No. 49 for providing alcoholic beverages to a woman who, while later operating a motor vehicle, caused the death of Cox. On review, the Court held that a social provider of alcohol to an intoxicated person, unlike a permit holder, is not liable to third persons subsequently injured by the intoxicated person.
 {¶ 32} The record reveals that TSS, like Wilmington Veterans Post No. 49, was merely a social host. TSS does not hold an alcohol permit. Affidavit testimony reveals that employee attendance at the company outing was not mandatory. Employees were not paid to attend, and no business was conducted during the event. TSS merely provided alcohol to King, who then committed an act of negligence. Absent a genuine issue of material fact as to TSS's status as a social host, the trial court did not err in concluding TSS is not, as a matter of law, liable for King's negligent acts.
 {¶ 33} Appellants contend that even if TSS is not liable because it was a social host and not a permit holder, it is nevertheless liable because it acted as the agent of a permit holder when it received beer from Cincinnati Concession and served it to King. We disagree.
 {¶ 34} In Great Central Insurance Co. v. Tobias (1988),37 Ohio St.3d 127, the Court rejected the proposition that a permit holder's duty should be enlarged and extended to one who purchases alcohol from a permit holder and then gives it to an intoxicated person. In that case, Tobias purchased ten shots of whiskey from an employee of Rainbow Lanes in Columbus. Tobias purchased the shots in conjunction with a wager he made with Steven Wagner, another patron present at Rainbow Lanes. Tobias offered Wagner $100 if he could drink all ten shots. Wagner consumed all ten, collected his money, and then left Rainbow Lanes. Two miles down the road, Wagner drove his vehicle into the side of a string of railroad cars and was killed instantly.
 {¶ 35} Wagner's widow sued Rainbow Lanes. Great Central Insurance, Rainbow Lanes' insurer, settled with Wagner's widow out of court. Great Central then sued Tobias, seeking contribution. On review, the Court ruled in favor of Tobias, holding that "the tavern keeper's duty, imposed by R.C.4301.22(B), may not be enlarged and extended vicariously 
through a `conduit' who * * * purchases alcohol from the tavern keeper and gives it to a fellow patron."
 {¶ 36} Similarly, in the instant case, the trial court correctly declined to find TSS could be liable as an agent simply because it purchased alcohol from Cincinnati Concession, and then gave that alcohol to King. See, also, Smith v. The 10th Inning,Inc. (1990), 49 Ohio St.3d 289 (reaffirming the holdings inGreat Central and Settlemyer that liability under R.C.4301.18 does not include social hosts or conduits of permit holders).
 {¶ 37} Appellants also contend that TSS is liable under the theory of respondeat superior. According to appellants, because the outing at Glenview was company sponsored, and three-quarters of the employees attended the event, TSS can be held liable for King's acts of negligence after leaving the party. Again, we disagree.
 {¶ 38} Under the doctrine of respondeat superior, an employer is liable for an employee's negligence where work is performed for the master and the servant is subject to the control of the master in performing the work. Boch v. New York Life Ins. Co.
(1964), 175 Ohio St. 458. For the employer to be liable, the employee's acts must also be within the scope of the employment. "Conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business." Martin v.Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 92.
 {¶ 39} Construing the evidence before the trial court most strongly in favor of appellants, no reasonable mind could conclude that King, a welder, was performing work for TSS, or that he was subject to TSS's control, while driving home. Nor could a reasonable mind conclude that King was within the scope of his employment when he negligently caused the accident with Forrest and Suleiman. See, also, Gilkey v. Gibson (Jan. 6, 2000), Franklin App. No. 98AP-1570 (holding an employer who hosted a holiday party was a social host and not liable under the doctrine of respondeat superior for the conduct of an intoxicated employee who left the party and caused an automobile accident).
 {¶ 40} Appellants also contend that a genuine issue of material fact exists as to whether TSS is liable under a theory of negligent hiring, supervision, and retention.
 {¶ 41} A party seeking to prevail on a claim for the negligent hiring, supervision and retention of an employee by an employer must show: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. Steppe v. KmartStores (1999), 136 Ohio App.3d 454, 465.
 {¶ 42} However, "in order to maintain a claim for negligent hiring, supervision, and retention, the threshold issue of whether the employee was `on the clock' when the criminal or tortious act was committed must be established." Saleh v. MarcGlassman, Inc., Cuyahoga App. No. 86010, 2005-Ohio-6127, ¶ 28. See, also, Evans v. Ohio State Univ. (1996),112 Ohio App.3d 724; Gebhart v. College of Mt. St. Joseph (1995),106 Ohio App.3d 1.
 {¶ 43} It is undisputed that King was a welder at TSS's plant. King testified in his deposition that he was not paid for attending the outing at Glenview. Furthermore, the accident occurred after King left Glenview and was driving home. No reasonable mind could conclude that King was on the clock during this time. Accordingly, appellants' contention is not well-taken.
 {¶ 44} For all the foregoing reasons, we find appellants' contention that the trial court erred in granting summary judgment to TSS to be without merit.
 The decision to grant summary judgment in favor of Cincinnati Concession {¶ 45} Appellants contend the trial court erred in granting judgment in favor of Cincinnati Concession because there was a genuine issue of material fact as to whether Cincinnati Concession violated R.C. 4399.18 and R.C. 4301.22(B), the Dram Shop Act.
 {¶ 46} To recover under R.C. 4399.18 and R.C. 4301.22(B), a plaintiff must prove that a permit holder or his employee knowingly sold an intoxicating beverage to a noticeably intoxicated person, whose intoxication proximately caused the damages sought. Gressman v. McClain (1988), 40 Ohio St.3d 359, paragraph two of the syllabus.
 {¶ 47} It is undisputed that Cincinnati Concession was the permit holder for the Glenview premises on September 7, 2001. However, no Civ.R. 56(C) evidence was presented to the trial court showing a genuine issue of material fact existed as to whether Cincinnati Concession or its employees sold an intoxicating beverage to a noticeably intoxicated King.
 {¶ 48} The evidence before the trial court shows that Cincinnati Concession did not sell beer to King or his co-workers. Cincinnati Concession transferred the beer to Leitz, TSS's Human Resources Director. A TSS employee, Puffy, then distributed the beer to King and other TSS employees during the golf portion of the event. After golf and during dinner, the beer was left in coolers for the employees to take as they saw fit. Lacking any evidence that Cincinnati Concession sold beer to King, the trial court correctly determined no genuine issue of material fact existed concerning Cincinnati Concession's liability under the Dram Shop Act.
 The decision to grant summary judgment in favor of Kemper and Glenview {¶ 49} Appellants contend the trial court erred in granting judgment in favor of Kemper and Glenview because genuine issues of material fact existed as to whether Kemper and Glenview were the principals in an agency relationship with Cincinnati Concession, and therefore liable as principals.
 {¶ 50} We concluded above that the trial court properly determined Cincinnati Concession did not violate R.C. 4399.18. Consequently, even if appellants established that Kemper and Glenview were in an agency relationship with Cincinnati Concession, they still would not be able to prevail; a principal cannot be held liable for the acts of its agent when the agent has committed no wrong.
 {¶ 51} Thus, appellants' contention that the trial court erred in granting judgment in favor of Kemper and Glenview is not well-taken.
 {¶ 52} For all the foregoing reasons, Forrest's sole assignment of error, and Suleiman's second, third, and fourth assignments of error are overruled.
 {¶ 53} Having ruled upon Forrest's sole assignment of error and Suleiman's second, third, and fourth assignments of error, we are left only with Suleiman's first assignment of error. In his first assignment of error, Suleiman argues the trial court erred when it declined to allow him to amend his complaint to mirror the allegations of Forrest regarding TSS's liability under the doctrine of respondeat superior.
 {¶ 54} We concluded above that the trial court correctly found TSS is not liable for King's acts of negligence under the doctrine of respondeat superior. Accordingly, we find Suleiman's first assignment of error to be moot. See App.R. 12(A)(1)(c).
 {¶ 55} To the extent appellants have raised other, various issues on appeal, we have considered them and find them to be without merit.
 {¶ 56} Judgment affirmed.
Powell, P.J., and Walsh, J., concur.