[Cite as *Eastley v. Volkman*, 2012-Ohio-4528.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| PAULA EASTLEY, Administrator of the Estate of Steven Hieneman, | : | Case Nos. 09CA3308 |
| | : | 09CA3309 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| PAUL HOLLAND VOLKMAN, M.D.,[1] | : | |
| | : | |
| Defendant, | : | |
| | : | |
| DENISE HUFFMAN, d/b/a Tri-State Health Care, | : | **RELEASED 09/20/12** |
| | : | |
| Defendant-Appellant, | : | |
| | : | |
| and | : | |
| | : | |
| STATE FARM FIRE AND CASUALTY COMPANY, | : | |
| | : | |
| Intervenor. | : | |

_____
APPEARANCES:

Mark H. Gams and M. Jason Founds, GALLAGHER, GAMS, PRYOR, TALLAN & LITTRELL, L.L.P., Columbus, Ohio and James L. Mann, MANN & PRESTON, L.L.P., Chillicothe, Ohio, for Appellant Denise Huffman, d/b/a Tri-State Health Care.

Thomas M. Spetnagel, SPETNAGEL & McMAHON, Chillicothe, Ohio, and Stanley C. Bender, Portsmouth, Ohio, for Appellee Paula Eastley, Administrator for the Estate of Steven Hieneman.

John F. McLaughlin, RENDIGS, FRY, KIELY & DENNIS, L.L.P., Cincinnati, Ohio, for Intervenor State Farm Fire and Casualty Company.
_____
Harsha, J.

{¶1}   This case is on remand from the Supreme Court of Ohio.  The estate of

---
[1] Volkman has not entered an appearance or otherwise participated in this appeal.

Steven Hieneman sued Denise Huffman, owner of the Tri-State Healthcare pain management clinic, and Paul Volkman, M.D., a physician at the clinic, for the wrongful death of Hieneman. While a patient at the clinic, Hieneman received treatment from Volkman, who gave him prescriptions for oxycodone, Xanax, and Valium. The next day, Hieneman died due to the acute combined effects of these drugs. A jury found that Volkman's medical malpractice and Huffman's ordinary negligence proximately resulted in Hieneman's death.

{¶2} In *Eastley v. Volkman*, 4th Dist. Nos. 09CA3308 & 09CA3309, 2010-Ohio-4771 ("*Eastley II*"), Huffman argued in part that the jury's verdict finding her negligent was against the manifest weight of the evidence and should be reversed. Although a majority of the panel agreed, one judge on the panel dissented from this determination. Because a judgment resulting from a trial by jury cannot be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause, we concluded that the verdict against Huffman survived the manifest weight of the evidence challenge. We overruled Huffman's remaining assignments of error and sustained State Farm's assignments of error, which related to its declaratory judgment action.

{¶3} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517 ("*Eastley III*"), the Supreme Court of Ohio reversed our decision regarding the manifest weight of the evidence. The Court concluded that the dissenting judge applied an incorrect standard when ruling on this issue and remanded for consideration of the issue under the appropriate standard. Applying this standard, we unanimously conclude that the jury's verdict was against the manifest weight of the evidence. We sustain Huffman's first assignment of error and reverse the trial court's judgment. The

remainder of our decision in *Eastley II* is law of the case.

## I. Facts

**{¶4}**   The estate filed a complaint for Hieneman's wrongful death, alleging that Volkman committed medical malpractice and that Huffman "breached a duty she owed to [Hieneman] not to negligently cause him harm[,]" proximately resulting in his death. The estate also alleged that Huffman and Volkman were "vicariously responsible for each other's conduct."  State Farm intervened as a third-party defendant because it had issued a business insurance policy, which was in effect on the date of Hieneman's death, to Denise Huffman, dba Tri-State Healthcare.  It filed a complaint for declaratory judgment, asking the court to declare that State Farm had no obligation to defend or indemnify Volkman or Huffman against the estate's claims.  The trial court bifurcated the declaratory judgment claim from the underlying wrongful death action.  A summary of the evidence introduced at the wrongful death trial follows.

**{¶5}**   Russell Steven, M.D., a pain medicine specialist, testified that on February 22, 2005, Volkman wrote Hieneman a prescription for 360, five milligram Percocet tablets, instructing him to take 12 pills daily.  If taken as prescribed, Hieneman would have been out of this medication for almost one month before his next appointment with Volkman on April 19, 2005.  At the follow-up visit, Volkman wrote Hieneman prescriptions for: 1.) Oxycodone-360, 15 milligram tablets; 2.) Valium-120, 10 milligram tablets; 3.) Xanax-30, 2 milligram tablets.  An autopsy report showed that Hieneman died the next day, i.e., April 20, 2005, from the acute combined effects of the latter three drugs.

**{¶6}**   On cross-examination, Dr. Steven admitted that the autopsy did not reveal

what amount of the prescription medications Hieneman took between the time the prescriptions were filled and his death. However, Dr. Steven testified that even if Hieneman took the medications as Volkman prescribed, they could have caused his death because the drugs are synergistic, i.e., when taken together the efficacy of each drug is enhanced, and Hieneman's opioid receptors would have reset during the nearly one month he was out of Percocet, i.e., his tolerance level for opioid pain medications would have decreased. Dr. Steven testified that Volkman fell below the standard of care in writing these prescriptions.

{¶7} Paula Eastley, Hieneman's mother and administrator of his estate, testified that her son took pain medication after injuring his hand. At some point, Eastley learned that Hieneman received treatment at Tri-State Healthcare. In August 2004, Eastley felt her son was overmedicated and tried to speak with Volkman, but he refused. When Eastley called Huffman and asked her to tell Volkman that she no longer wanted him to treat her son, Huffman hung up on her. Eastley contacted Huffman again and told her that Hieneman was bipolar and "having a lot of problems." Eastley informed Huffman that Hieneman was under the care of another pain clinic, seeing a psychiatrist, and in physical therapy. Huffman told Eastley that her son "was a growing man and he could make his own decisions and it was really none of [her] business." The medical records in evidence do not show that Hieneman received treatment at the clinic during the time period Eastley contacted Huffman and Volkman. The records do show Volkman prescribed him medication in February 2004 but did not see him again until February 2005.[2]

---

[2] Both parties attribute this treatment gap to Hieneman's failure to appear for a "pill count," which is a procedure used to ensure a patient is taking medication as directed. However, the trial record does not

{¶8}   Huffman testified via deposition that she had a GED and little formal education in the medical field.  In 2001, she started Tri-State Healthcare and primarily staffed the clinic with doctors from placement agencies.  However, Volkman independently contacted her about practicing at the clinic and came to Tri-State Healthcare in April 2003.  Huffman testified that she paid bills, assisted in taking the blood pressure of patients, did some medical charting, and maintained patient records at the clinic.  But, she denied any involvement in Hieneman's treatment and contended that she did not monitor Volkman's work in any manner.  Huffman admitted that she had looked at Hieneman's charts before.  These records contained information indicating that Hieneman may have abused pain medications in the past.  But when asked whether she knew if Hieneman was addicted to drugs prior to his death, Huffman testified "I don't know. I'm not aware of it if he was."

{¶9}   The jury found in favor of the estate against both Huffman and Volkman on the negligence claims.  The trial court entered a judgment against Huffman and Volkman, jointly and severally.[3]  Huffman then filed her first appeal, which we dismissed

---

support this conclusion.  Hieneman's medical records provide no explanation for the gap.  Although Huffman referred to the pill count in her deposition, that portion of her deposition was not read to the jury. The only mention of the pill count at trial was made during opening statements, which are not evidence.

[3] After trial, the court's entry stated that the "jury found in favor of [the estate] and against both defendants and awarded damages in the amount of $500,000.00.  Accordingly, the Court hereby enters judgment against defendants, jointly and severally, in the amount of $500,000.00."  Although neither party raises the issue, the record indicates that the jury may have intended to render a verdict totaling $1,000,000 in damages.  At trial, the jury was asked to answer an interrogatory that stated "What sum of money do you find to compensate for the death of Steven Hieneman?"  The number "$700,000" appears as the answer to this interrogatory but was struck out and replaced with "$1,000,000."  In the trial transcript, the court indicates that the jury's initial answer to this question was in fact $700,000.  The jury also originally signed verdict forms stating 1.) "We, the Jury, do hereby find for the Plaintiff and against [Huffman] and we find that the total amount of compensatory damages is $200,000"; and 2.) "We, the Jury, do hereby find for the Plaintiff and against [Volkman] and we find that the total amount of compensatory damages is $500,000."

Counsel for the estate expressed concern that with joint and several liability, the amount of damages awarded against each defendant had to be the same.  The trial court instructed the jury: "Okay. There's

for lack of a final appealable order due to the estate's unresolved prayer for punitive damages and State Farm's unresolved declaratory judgment action. *Eastley v. Volkman*, 4th Dist. No. 08CA3223, 2009-Ohio-522 ("*Eastley I*").

{¶10} Subsequently, the estate dropped its request for punitive damages and State Farm filed motions for summary judgment on its declaratory judgment action. The estate also filed a motion for summary judgment, seeking a declaration that Huffman's negligence fell within the liability coverage of the business insurance policy State Farm issued. The trial court granted State Farm a summary judgment on its claims against Volkman but denied its motion concerning Huffman. Instead, the court granted the estate's motion for summary judgment. Then Huffman and State Farm filed separate appeals, which we consolidated.

{¶11} We affirmed the verdict against Huffman in *Eastley II*. Two judges on the panel agreed with Huffman that based on an ordinary negligence theory, the jury's verdict was against the manifest weight of the evidence. However, one judge dissented on this issue. He concluded that because Huffman had not renewed her motion for a directed verdict or filed a motion for new trial or for judgment notwithstanding the verdict, she had forfeited all but plain error. Furthermore, that judge determined plain error had not occurred. Thus, we were prohibited from reversing the verdict based upon

---

been a misunderstanding. When you find for the damages, they have to be in the same amount because they're jointly and severally liable. So whatever amount you come up with, it has to be found the same against Dr. Volkman and Denise Huffman. Okay? So what I'm going to ask you to do is basically just scratch out the figures you came up with and come up with figures that equal the same. Okay?" After the jury returned, the court indicated, "Now, it says 'We the jury find for the Plaintiff, against defendant, Paul Volkman, $500,000.00, and against Denise Huffman $500,000'. Any questions?" And no one responded. The jury did revise the verdict form for Huffman to indicate that "the total amount of compensatory damages is $500,000" and crossed out the previous response of $200,000. However, the trial court failed to mention that the jury also apparently altered the amount of $700,000 in the interrogatory to $1,000,000. Thus it appears that the jury may have been confused by the trial court's instruction and thought that it was awarding the estate $1,000,000 and instructing each defendant to pay $500,000 of that award.

a weight of the evidence argument because under the Ohio Constitution, Article IV, Section 3(B)(3), a reversal of a jury verdict on the manifest weight of the evidence requires concurrence of all three judges. Accordingly, we rejected Huffman's manifest weight argument and addressed her remaining assignments of error, which we overruled. We also sustained State Farm's assignments of error.

{¶12} The Supreme Court of Ohio accepted a discretionary appeal "to clarify when and upon what standard a court of appeals must review the weight of the evidence in a case." *Eastley III*, *supra*, at ¶ 6. The Court held that "[w]hen the evidence to be considered is in the court's record, a party need not have moved for directed verdict or filed a motion for a new trial or a motion for judgment notwithstanding the verdict to obtain appellate review of the weight of the evidence." *Id.* at paragraph one of the syllabus. The Court also held that "[i]n civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Id.* at paragraph two of the syllabus. The Court reversed our judgment on the manifest weight issue, i.e., Huffman's first assignment of error, and remanded for consideration of her argument under the appropriate standard. The remainder of our decision in *Eastley II* is law of the case.

## II. Huffman's First Assignment of Error

{¶13} Huffman first assignment of error states:

I. THE JURY'S VERDICT AGAINST APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Manifest Weight of the Evidence

### A. Standard of Review

{¶14} In her first assignment of error, Huffman contends that the jury's verdict

was against the manifest weight of the evidence because she did not breach a duty of

care or proximately cause Hieneman's death.  As the Supreme Court explained in

*Eastley III*:

> Weight of the evidence concerns "the inclination of the *greater amount of
> credible evidence*, offered in a trial, to support one side of the issue rather
> than the other.  It indicates clearly to the jury that the party having the
> burden of proof will be entitled to their verdict, if, on weighing the evidence
> in their minds, they shall find *the greater amount of credible evidence*
> sustains the issue which is to be established before them.  Weight is not a
> question of mathematics, but depends on its *effect in inducing belief*."
> (Emphasis sic.)  *Eastley III* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio
> St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶15}** When conducting a manifest weight review:

> "The [reviewing] court * * * weighs the evidence and all reasonable
> inferences, considers the credibility of witnesses and determines whether
> in resolving conflicts in the evidence, the [finder of fact] clearly lost its way
> and created such a manifest miscarriage of justice that the [judgment]
> must be reversed and a new trial ordered."  *Id.* at ¶ 20, quoting *Tewarson
> v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001).

**{¶16}** In weighing the evidence, the court of appeals must remain mindful of the

presumption in favor of the fact finder:

> "[I]n determining whether the judgment below is manifestly against the
> weight of the evidence, every reasonable intendment and every
> reasonable presumption must be made in favor of the judgment and the
> finding of facts. * * *

> If the evidence is susceptible of more than one construction, the reviewing
> court is bound to give it that interpretation which is consistent with the
> verdict and judgment, most favorable to sustaining the verdict and
> judgment."  *Id.* at ¶ 21, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio
> St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

### B.  Negligence

**{¶17}** "In order to recover on a negligence claim, a plaintiff must prove the

existence of a duty of care, a breach of that duty, and that damages proximately

resulted from the breach." *Morgan v. Gracely*, 4th Dist. No. 05CA36, 2006-Ohio-2344, ¶ 6, citing *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989). Whether the defendant had a duty is a question of law for the court. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). However, once a plaintiff establishes that the defendant had a duty, whether the defendant breached that duty is generally a question of fact for the jury. *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). Likewise, proximate cause ordinarily presents a question of fact for the jury. *Aldridge v. Reckart Equip. Co.*, 4th Dist. No. 04CA17, 2006-Ohio-4964, ¶ 79.

{¶18} We unanimously conclude that the jury's finding that Huffman breached a duty of care is against the manifest weight of the evidence. The estate did not pursue a theory of vicarious liability at trial, i.e., the estate did not argue that Huffman was secondarily liable for Volkman's negligence because of the nature of their relationship. Instead, the estate argued that Huffman was directly liable for Hieneman's death because she breached a duty of care in a manner entirely independent of Volkman's medical malpractice. In addressing Huffman's potential liability, the trial court instructed the jury, without objection, only on the basic elements of a negligence claim. Specifically, the court instructed the jury that "[e]very person is required to use ordinary care to avoid injuring another person," defined "ordinary care," and explained "proximate cause" and the factors the jury could consider in determining damages. This is a default standard, i.e., a standard applied when there is no other more specific standard addressed to the particular parties or their particular situation.

{¶19} However, the only theory of direct liability that the evidence in this case

could feasibly support is a negligent supervision claim.  If we presume the estate established by a preponderance of the evidence that Volkman's prescriptions proximately caused Hieneman's death – a finding Huffman challenges – the only manner in which Huffman arguably did not exercise ordinary care was in failing to provide any oversight over Hieneman's treatment at the clinic.  Huffman admitted that she did not monitor Volkman's work.  And given her access to Hieneman's medical records, she may have had reason to question Volkman's decision to prescribe pain medications to a patient that appeared to have a history of abusing such medications.  If Huffman had supervised Volkman's work, perhaps he would not have prescribed Hieneman a lethal combination of pain killers.

{¶20}  But to succeed on a negligent supervision claim, the estate had to meet a more specific standard than the standard for a basic negligence claim.  The estate had to establish: 1.) the existence of an employment relationship; 2.) the employee's incompetence; 3.) the employer's knowledge of the employee's incompetence; 4.) the employee's act or omission causing the plaintiff's injuries; and 5.) a causal link between the employer's negligence in supervising its employee and the plaintiff's injuries. *Whelan v. Vanderwist of Cincinnati, Inc.*, 11th Dist. No. 2007-G-2769, 2008-Ohio-2135, ¶ 48, citing *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 171 Ohio App.3d 570, 2007-Ohio-795, 872 N.E.2d 295, ¶ 42 (2nd Dist.).  Initially, we question whether the estate could have proven that Volkman acted as an employee instead of as an independent contractor.  But more importantly, because the jury was not instructed on any of the specific elements of a negligent supervision claim, that theory cannot be a basis for upholding the jury's verdict.

**{¶21}** We acknowledge that on appeal the estate tries to classify Huffman's failure to supervise as a violation of a duty Huffman owed Hieneman based on his status as an invitee at the clinic. However, we reject this characterization as the jury was not instructed on premise liability principles, e.g., the jury was not instructed on the definition of an invitee. Nor would premises liability principles seem to fit the plaintiff's theory of the case, i.e., Hieneman was not injured by any physical defects in the premises.

**{¶22}** The estate also attempts to couch Huffman's failure as negligence in making "administrative decisions" or providing "administrative oversight." Specifically, the estate argues that Huffman failed to provide "utilization reviews, quality assurance performance or quality standards, and internal review procedures." The estate also argues that she failed to provide any oversight over narcotic medication prescriptions even though she had looked at Hieneman's file before and arguably knew of his struggles with drug abuse. But regardless of how the estate frames its argument on appeal, these are simply examples of how Huffman could have, but did not, supervise Volkman. And because no evidence supports a finding that Huffman breached a duty of ordinary care separate from her failure to supervise Volkman, and because the jury was not instructed on the elements of a negligent supervision claim, we conclude the jury's verdict is against the manifest weight of the evidence. This decision renders moot Huffman's additional contention that the jury's conclusion that she proximately caused Hieneman's death was also against the manifest weight of the evidence. We sustain Huffman's first assignment of error, reverse the trial court's judgment and remand for further proceedings. Again, the remainder of our decision in *Eastley II* remains intact.

JUDGMENT REVERSED IN PART
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED IN PART and that the CAUSE IS REMANDED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, P.J. & Kline, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**