[Cite as *Diemer v. Minute Men, Inc.*, 2018-Ohio-1290.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105398**

## ANDREW DIEMER, EXECUTOR, ETC.

PLAINTIFF-APPELLANT

vs.

## MINUTE MEN, INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-849923

**BEFORE:** Celebrezze, J., E.A. Gallagher, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** April 5, 2018

**ATTORNEYS FOR APPELLANT**

Patrick J. Quallich
Christopher A. Holecek
Sarah Nemastil
Wegman, Hessler & Vanderburg
6055 Rockside Woods Boulevard, Suite 200
Independence, Ohio 44131


**ATTORNEYS FOR APPELLEES**

**For Minute Men, Inc.**

David M. Ondrey
Thrasher Dinsmore & Dolan
100 7th Avenue, Suite 150
Chardon, Ohio 44024

Albert A. Giuliani
323 West Lakeside Avenue, Suite 300
Cleveland, Ohio 44113

Abigail A. Greiner
Colleen A. Mountcastle
D. John Travis
Gallagher Sharp, L.L.P.
Bulkley Building, 6th & 7th Floors
1501 Euclid Avenue
Cleveland, Ohio 44115

John Spellacy
John J. Spellacy & Associates
Assistant City Prosecutor
5555 Powers Boulevard
Parma, Ohio 44129

**For Cleveland Indians Baseball Company Limited Partnership**

J. Jaredd J. Flynn
Todd C. Hicks
Thrasher Dinsmore & Dolan
100 7th Avenue, Suite 150
Chardon, Ohio 44024

**For Ronald Hillman**

Ronald Hillman, pro se
Mansfield Correctional Institution
Inmate No. A672951
P.O. Box 788
Mansfield, Ohio 44901

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, Andrew Diemer, representative of the estate of Michaela Diemer, appeals the grant of summary judgment in favor of appellees, Minute Men, Inc. ("Minute Men"); and the Cleveland Indians Baseball Company, Inc., and the Cleveland Baseball Company Limited Partnership (collectively "CIB"). Andrew claims that the trial court erred in granting summary judgment because these companies owed a duty to Michaela, and the companies are independently liable for their negligent retention and promotion of Ronald Hillman to a supervisory position that he used to facilitate the rape and murder of Michaela. After a thorough review of the record and law, this court affirms in part, reverses in part, and remands.

## I. Factual and Procedural History

{¶2} Minute Men, a staffing agency, was hired by CIB for facility cleaning services at Progressive Field. Minute Men provided cleanup crews and supervisors to clean the stands, fields, and a few other areas of Progressive Field after each game. During each home game, Dominic Sabetta, project manager for Minute Men, would receive a call from Thomas Evans, a supervisor for CIB, with the number of cleaners required. The number of workers depended on various factors including attendance and whether there were fireworks after the game. During the cleanup, Sabetta was in charge of these workers as the project manager. He had a managing assistant along with two supervisors that reported to him and his assistant. Two crew leaders reported to the

supervisors and would often be tasked with specialized assignments such as cleaning the field or dugout of sunflower seed hulls.

**{¶3}** After Sabetta was informed of the number of cleaners required, he would open the office at Minute Men where people would gather in hopes of working in the clean up crew. He would select people and assign them numbers and badges. Those individuals would then report to the ballpark at a designated time and be placed into various cleanup crews. When there were not enough individuals that reported to the stadium, a Minute Men employee would sometimes drive to a nearby homeless shelter to recruit individuals to work.

**{¶4}** Ronald Hillman was living in a homeless shelter, and began working cleanup at the ballpark for Minute Men on opening day of the 2014 season. He showed himself to be a hard worker and was rewarded several times with a more desirable position running a backpack blower used during the cleanup process for CIB. At some point, a crew leader position became available. It is disputed who recommended Hillman for the position. Likely, Sabetta, or someone from Minute Men recommended Hillman for the position, and with Evans's approval, Hillman became a crew leader. He was issued a two-way radio and credentials identifying him as such.

**{¶5}** According to Evans's and Sabetta's testimony, a crew leader could not discipline a fellow cleaner, nor could a crew leader select which people would get chosen to work in the cleanup crew. Those decisions took place at Minute Men's office, rather than at the ballpark, and that responsibility was Sabetta's. However, a crew leader could

select which individuals would work alongside the crew leader in a more desirable position. Also, the crew leaders could inform a supervisor or Sabetta that an individual was not working out, and that individual would not be invited back to work at the ballpark. Other testimony in the record indicates that crew leaders could select people to work for those individuals that just showed up at the gate during a game, rather than sign up at Minute Men's offices.

{¶6} Michaela was informed by a friend, Lisa Honeker, that she could make a little money by working in a cleanup crew at the ballpark. At the time, Michaela, a former nurse, was living in a homeless shelter. Michaela went with her friend to the ballpark the night of August 16, 2014, and sought to work in a cleanup crew. The two did not sign up at Minute Men's office. Honeker averred in an affidavit that Hillman selected Michaela to work in a crew where Hillman was the crew leader and directed her activities while working. According to Honeker, he showed particular interest in Michaela and was hitting on her. Michaela also worked the next night at the ballpark in a cleanup crew where she was again selected by Hillman to work in the park. After that shift, Hillman and Michaela left together in Michaela's car. The two spent some time at a downtown Cleveland casino the following night, and then Michaela was not seen again until her body was discovered in an abandoned house in Cleveland.

{¶7} Hillman was eventually arrested and charged with her rape and murder. In August 2015, he pled guilty to several charges, including rape and murder. He was sentenced to life in prison without the possibility of parole. Hillman had been previously

convicted of rape and had been adjudicated a sexual predator prior to his employment with Minute Men.

{¶8} Andrew then filed suit against Hillman and Minute Men, asserting causes of action for wrongful death, survival, intentional and negligent infliction of emotional distress;[1] and claims of assault, battery, and false imprisonment against Hillman. CIB was added later in an amended complaint.

{¶9} The case proceeded through discovery and appellees filed motions for summary judgment. In separate entries issued January 18, 2017, the trial court granted the appellees' motions for summary judgment. In each journal entry, the court also dismissed Andrew's claims against Hillman without prejudice for failure to prosecute.[2] Andrew then filed the instant appeal, raising three errors for review:

> I. The trial court erred, as a matter of law, in granting the motion for summary judgment filed by [Minute Men], as well as the motion for summary judgment filed by [CIB].
>
> II. The trial court erred, as a matter of law, in failing to consider that Minute Men and [CIB] were directly and independently liable for their negligent retention and promotion of Hillman, separately from the doctrine of respondeat superior, which [Andrew] neither pleaded nor alleged in this case.
>
> III. The trial court erred, as a matter of law, in holding that an employer, who knowingly retains and promotes to supervisor an adjudicated sexual predator with a history of committing violence against women, does not

---

[1] The negligent infliction of emotional distress claim was actually argued as a negligent hiring, retention, supervision, or promotion claim.

[2] Andrew does not raise an issue with the trial court's dismissal of the claims against Hillman.

owe a duty of care to protect or warn a subordinate female employee from foreseeable harm posed by that supervisor after work hours.

## II. Law and Analysis

### A. Standard of Review

{¶10} Andrew's assigned errors all assert that the trial court erred in granting summary judgment and address only the negligence claims. Therefore, this court will address the negligence claims and the assigned errors together.

{¶11} Summary judgment under Civ.R. 56 provides for the expedited adjudication of matters where there is no material fact in dispute to be determined at trial. To obtain summary judgment, the moving party must show that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

{¶12} The moving party has the initial responsibility of establishing its entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "[I]f the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 16, citing *Dresher* at 293.

**{¶13}** Once a moving party demonstrates no material issue of fact exists for trial and the party is entitled to judgment, it is the nonmoving party's duty to come forth with argument and evidence that demonstrates a material issue of fact does exist that would preclude judgment as a matter of law. *Id.*

### B. Negligent Promotion

**{¶14}** Andrew asserted negligence claims against Minute Men and CIB. Generally, a successful negligence claim requires a showing of the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 738, 680 N.E.2d 161 (10th Dist.1996), citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

**{¶15}** Building on this standard in the specialized context of liability for the acts of an agent, Ohio courts have set forth the necessary elements of a claim in this context:

> "'(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring [, promoting,] or retaining the employee as the proximate cause of plaintiff's injuries.'"

*Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 69, 430 N.E.2d 935 (1982), quoting *Ruta v. Breckenridge-Remy Co.*, 6th Dist. Erie No. E-80-39, 1980 Ohio App. LEXIS

12410, 7 (Dec. 12, 1980), quoting Restatement of the Law 2d, Agency, Section 213, Comment d (1958).[3] The comment to this section of the Restatement goes on to say,

> [o]ne who employs another to act for him is not liable under the rule stated in this Section merely because the one employed is incompetent, vicious, or careless. If liability results it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business in hand. What precautions must be taken depend upon the situation. One can normally assume that another who offers to perform simple work is competent. If, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation.

Restatement of the Law 2d, Agency, Section 213, Comment d.

**{¶16}** "The foreseeability of a criminal act depends upon the knowledge of the defendant, which must be determined by the totality of the circumstances, and it is only when the totality of the circumstances are 'somewhat overwhelming' that the defendant will be held liable." *Evans* at 742, citing *Feichtner v. Cleveland,* 95 Ohio App.3d 388, 396, 642 N.E.2d 657 (8th Dist.1994). "The totality of the circumstances test considers prior similar incidents, the propensity for criminal activity to occur on or near the location of the business, and the character of the business." (Citations omitted.) *Shivers v. Univ. of Cincinnati*, 10th Dist. Franklin No. 06AP-209, 2006-Ohio-5518, ¶ 7.

### 1. Claims against Minute Men

---

[3] The Supreme Court of Ohio was merely quoting those elements without deciding whether the tort actually existed in Ohio. Since then, other appellate courts, including this one, have used these elements to analyze tort claims based on a theory of negligent hiring, retention, or supervision.

**{¶17}** Andrew's claims against Minute Men are that it negligently promoted Hillman to a position of authority, which allowed him to abuse that authority and lure Michaela into a situation where Hillman would rape and murder her.

**{¶18}** Generally, there is no duty to control the conduct of third parties by preventing them from causing harm to another, except in cases where there exists a special relationship between the actor and the third party that gives rise to a duty to control, or between the actor and another that gives the other the right to protection. *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173, 543 N.E.2d 769 (1989). An employment relationship often constitutes a special relationship. *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, 861 N.E.2d 920, ¶ 16 (10th Dist.). Here, there was an employment relationship, albeit a temporary one, between Minute Men and Hillman, and Minute Men and Michaela. Therefore, for the purposes of summary judgment, there is an employment relationship that satisfies the first element of the above test.

**{¶19}** Also for summary judgment purposes, taking all reasonable inferences in favor of the nonmoving party, Hillman was incompetent to work in a position of authority based on his past criminal history. Minute Men argues that the type of work involved was low-wage, unskilled labor that could be done by anyone with a willingness to do it. In fact, the Restatement supports this position for the job of a cleaner: "One can normally assume that another who offers to perform simple work is competent." Restatement of the Law 2d, Agency, Section 213, Comment d. That is the case here

when Hillman was working as a general laborer with only slight contact with the public. However, the elevation of Hillman to group leader bestowed more responsibilities, and at least the appearance of authority over his coworkers. The comment goes on to provide, "[i]f, however, the work is likely to subject third persons to serious risk of great harm, there is a special duty of investigation." *Id.*

{¶20} Minute Men also had knowledge of Hillman's incompetency. Minute Men employees, including Sabetta, had some level of knowledge of Hillman's criminal convictions. Sabetta, along with another Minute Men employee, conducted a cursory check of Hillman's criminal background in the process of determining whether Hillman qualified for work with another employer. Sabetta likely promoted Hillman, or recommended him for promotion to group leader. Sabetta knew that Hillman had serious felony convictions, but the extent of knowledge is in dispute. Records from the Cuyahoga County Common Pleas Court docket, which were submitted in this case, and what Sabetta likely examined, reveals that Hillman had several convictions, including one for rape, for which he was declared a sexual predator.

{¶21} The level of care that must be exercised by an employer in making employment decisions depends on the nature of the decision and all the surrounding facts and circumstances. *Shivers*, 10th Dist. Franklin No. 06AP-209, 2006-Ohio-5518, at ¶ 7. Generally, the type of employment offered by Minute Men in this case requires little investigation. But where an employee may exercise control or supervision over fellow employees, more may be required.

**{¶22}** For instance, this court has recognized that "[a]n employer may be negligent if he knew, or should have known, that his employee had a propensity for violence and such employment might create a situation where the violence would harm a third person." *Steppe v. KMart Stores*, 136 Ohio App.3d 454, 466, 737 N.E.2d 58 (8th Dist.1999), citing *Staten v. Ohio Exterminating Co., Inc.*, 123 Ohio App.3d 526, 530, 704 N.E.2d 621 (10th Dist.1997). When an employer bestows on an individual the tools of authority and supervision that could be yielded with a malevolent purpose, liability may be found where the employer has reason to know of an individual's propensity to do so, depending on the facts and circumstances of the case.

**{¶23}** In *Evans*, a committee overseeing a program of clinics within the 4-H program employed James Waites to speak at clinics in a controlled environment. The committee learned that Waites had a criminal history and still chose to allow Waites to speak at two other clinics. Months after the last clinic, Waites became involved in the life of a young girl in the role of helping her with a 4-H project. Waites molested this girl, and others, and was eventually found guilty of numerous charges of rape and felonious assault. *Evans,* 112 Ohio App.3d at 732-733, 680 N.E.2d 161. In affirming the grant of summary judgment, the *Evans* court emphasized the scope of the duty and its interrelatedness to the foreseeability of harm:

> In addition to the limited nature of the duties for which Waites was hired as well as the limited degree of contact he had with other individuals in performing those duties, the circumstances of this case indicate that no incidents occurred at any clinic in which Waites participated * * * defendant had no knowledge of Waites' personal activities in that county, the assault at issue did not occur at a 4-H event, the injured plaintiff was not

a member of 4-H at the time Waites was employed by defendant and there was no employment relationship between defendant and Waites at the time of the molestation, Waites' last clinic event taking place over one year prior to the incident.

*Id.* at 743. However, the *Evans* court recognized that a duty may exist to those children that actually attended the clinics when Waites had an employment relationship with the 4-H program. *Id.*

**{¶24}** Relying in part on *Evans*, this court addressed a negligent hiring, retention, and supervision claim, and held that there is a requirement that an employee be "on the clock" when a criminal or tortious act is committed. *Saleh v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 86010, 2005-Ohio-6127, ¶ 28. In *Saleh*, teenage employees of a grocery store who were on a break assaulted other teenagers. *Id.* at ¶ 5-6. Appellees rely on the holding in this case to disclaim any liability for Hillman's actions. While *Evans* does not explicitly set forth a requirement that liability may only attach when an employee is "on the clock," the other cases that the *Saleh* court cited do support such a holding. *See Gebhart v. College of Mt. St. Joseph*, 106 Ohio App.3d 1, 665 N.E.2d 223 (1st Dist.1995); *Malone v. Miami Univ.*, 89 Ohio App.3d 527, 625 N.E.2d 640 (10th Dist.1993). However, *Gebhart* was a negligent supervision case where that court found that there was no duty to supervise an employee when that employee was not at work, but was at home. *Id.* at 5. *Malone* is also a negligent supervision case where an employer allowed a clearly intoxicated employee to leave work at his regularly scheduled time and drive home. *Id.* at 530-531.

**{¶25}** *Saleh, Gebhart*, and *Malone* do not really address the negligent promotion claim that has been asserted in the present case. They address negligent supervision claims. Those cases are not determinative because the duty to supervise necessarily includes an ability to supervise for the imposition of liability on an employer. When employees are not "on the clock," an employer generally has no authority or ability to supervise them. Therefore, liability does not attach for actions that occur when an employee is away from work or not subject to the supervision of the employer.

**{¶26}** This case is different. It is more like *Evans* where the claims asserted are in the negligent hiring, retention, or promotion of an employee where that decision created a significant risk of harm to those that enjoy a special relationship with the employer. The *Evans* court found no special relationship existed between the victims in that case, but also recognized that had the victims attended one of Waites' clinics and enjoyed that special relationship, a duty may exist and the case may have come out differently.

**{¶27}** Here, the foreseeability of Hillman's actions, given Minute Men's knowledge of his adjudication as a sexual predator and his prior history of raping women, gives rise to a duty to warn or protect others from that danger. Minute Men may not have had an independent duty to investigate Hillman given that its client did not direct it to do any criminal investigations of its employees supplied for the cleaning service, but once Minute Men had knowledge of Hillman's criminal history, a duty arose to not act negligently in the promotion of Hillman to a position that put him in charge of others.

**{¶28}** In the present case, there are questions of fact about the extent to which Hillman's promotion to group leader led to Michaela's death. "[O]nce a plaintiff establishes that the defendant had a duty, whether the defendant breached that duty is generally a question of fact for the jury. Likewise, proximate cause ordinarily presents a question of fact for the jury." (Citations omitted.) *Eastley v. Volkman*, 4th Dist. Scioto Nos. 09CA3308 and 09CA3309, 2012-Ohio-4528, ¶ 17. Even though the harm that befell Michaela occurred outside of the work situs and while Hillman was not under the supervision of Minute Men, the act of promoting Hillman to a position of at least apparent authority over Michaela may have proximately caused her death.

**{¶29}** The extent of Hillman's supervisory authority is hotly contested in this case. Minute Men claims that Hillman was not a supervisor and therefore, they are not liable for his actions.

**{¶30}** Addressing the definition of "supervisor" in a claim of a hostile work environment under Title VII of the Civil Rights Act of 1964, the Supreme Court determined "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim * * *." *Vance v. Ball State Univ.*, 570 U.S.___, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013). There, the court looked to the Restatement of the Law, Agency, Section 219(2)(d) for guidance, and recognized an exception to the general rule that an employer is not liable for the intentional torts of its employees. Where the employee was aided in accomplishing the tort by the existence of the agency relationship,

an employer may be liable.  *Id*. at 2441.  The court went on to note the balance that had been struck in prior cases between the interests of employers and employees.  "Specifically, an employer can mitigate or avoid liability by showing (1) that it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided."  *Id*. at 2442, citing *Faragher v. Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998);  *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

{¶31} The *Vance* court somewhat narrowly defined a supervisor in the Title VII context to only those employees that can take a tangible employment action against another employee.  *Id.* at 2443.  A tangible employment action is defined as "a significant change in [the victim's] employment status * * *."  *Id.*

{¶32} However, this is not a Title VII case.  The above case law deals with vicarious liability for the actions of a supervisor, but not liability for the independent negligent acts of the employer in promoting or retaining an employee.  The *Vance* court recognized the distinction when it stated, "we have held that an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior."  *Vance* at 2441, citing  *Faragher* at 789.  The court then went on to analyze an employer's *vicarious* liability for the actions of a supervisor in creating a hostile workplace.  The definition of a supervisor in this context is applicable for vicarious liability claims.  Therefore, the narrow definition of a supervisor as set forth in

*Vance* is not altogether applicable. This is not a vicarious liability claim against Minute Men. Andrew's claim here is that Minute Men had knowledge that promoting Hillman posed a serious risk of harm to other employees and they did that without taking any actions to warn or protect other employees.

{¶33} Even if *Vance* was applicable, according to Honeker, Hillman could determine whether Michaela was assigned to a more desirable position, or even hired in the first place. Her affidavit indicated that Michaela was hired outside the normal process implemented by Minute Men. Usually, temporary employees would arrive at Minute Men's office and sign into the computer systems. In such cases, it was Sabetta's duty to make hiring decisions. However, Michaela did not do this. She arrived at Progressive Field and was selected for employment each night by a group of crew leaders and Sabetta, and specifically Hillman. Hillman also selected Michaela for more desirable work details. Sabetta also indicated that group leaders could recommend that a person not return to work in the clean up crews and those recommendations would be followed. These abilities are consistent with the definition of tangible employment actions set forth in *Vance*.

{¶34} Therefore, the trial court's grant of summary judgment in favor of Minute Men is reversed.

### 2. Claims Against CIB

{¶35} The claims against CIB fail based on a lack of foreseeability given the lack of knowledge CIB had in relation to Hillman's criminal background.

**{¶36}** CIB had no actual knowledge of Hillman's criminal history. There is also no evidence that CIB was aware Hillman engaged in any physical violence or sexual harassment while working at the ballpark. Sabetta did testify that Hillman got into a few arguments and used profanity, but there were no physical altercations. Therefore, Andrew tries to assert claims of imputed or constructive knowledge based on a theory of borrowed or shared employees.

**{¶37}** In the present case, CIB had no actual or constructive knowledge of Hillman's criminal history. "[O]nly those circumstances which [an employer] perceived, or should have perceived, at the time of their respective actions should be considered. Until specific conduct involving an unreasonable risk is made manifest by the evidence presented, there is no issue to submit to the jury." *Menifee*, 15 Ohio St.3d at 77, 472 N.E.2d 707, citing *Englehardt v. Philipps*, 136 Ohio St. 73, 23 N.E.2d 829 (1939); *Prosser & Keeton, Law of Torts,* Section 31, 169 (5 Ed.1984).

**{¶38}** Andrew claims that because Sabetta was a de facto employee of CIB, his knowledge of Hillman's criminal background should be imputed to it. "The loaned servant rule provides that where one person lends his servant to another for a particular employment, within the context of that employment, the servant is treated as if he were the servant of the one to whom he was lent." *Lawson v. May Dept. Store*, 7th Dist. Mahoning No. 00 CA 191, 2001 Ohio App. LEXIS 5325, 2 (Nov. 27, 2001), citing *Halkias v. Wilkoff Co.*, 141 Ohio St. 139, 151, 47 N.E.2d 199 (1944).

**{¶39}** The question turns on control.

In determining whether the borrowed employee has become a loaned servant of a party other than his general employer, the inquiry should focus on the question of control, that is, whether the general employer has retained direction and control over the employee, or whether, with respect to the particular act or acts resulting in tort liability, the control of the employee has passed to the borrowing employer "with reference not only to the result reached but to the method of reaching it."

*Seiler v. Donald Martens & Sons Ambulance Serv.*, 8th Dist. Cuyahoga No. 88043, 2007-Ohio-1603, ¶ 18, quoting *Cincinnati Ins. Co. v. Continental Ins. Co.*, 1st Dist. Hamilton Nos. C-940884 and C-940890, 1995 Ohio App. LEXIS 5325 (Dec. 6, 1995).

**{¶40}** Control can be analyzed by asking "whether while performing the task, the employee continues to be liable to the direction and control of the general employer, or becomes subject to that of the person to whom he is lent." *Carrico v. Drake Constr.*, 5th Dist. Stark No. 2005 CA 00201, 2006-Ohio-3138, ¶ 24.

**{¶41}** Here, Minute Men not only provided workers to CIB, it also provided a supervisory structure to manage the cleaning services. Each engagement for cleaning at the ballpark included Minute Men providing general laborers to collect trash and recycling, and a team of supervisors and managers to oversee the general laborers and group leaders.

**{¶42}** The contracts between Minute Men and CIB provided that Minute Men would provide "in-park cleanup services" for a particular season. The agreements are termed partnership agreements. They provided advertising for Minute Men at the ballpark and allowed the use of certain trademarks in Minute Men's advertising. The agreements also stated that Minute Men would provide the aforementioned cleanup

services at rates set forth in an attachment to the contract. The contracts contemplate the provision of cleanup services. However, the contracts do not spell out the relationship between the parties and leave many details of this relationship unanswered.

{¶43} Both Sabetta and Evans testified that it was Minute Men's responsibility to hire, discipline, pay, and direct the activities of the Minute Men employees working at the ballpark. Evans had an overall supervisory responsibility, and often micro managed the cleanup process, but he would not discipline Minute Men employees. Here, CIB did not exercise the requisite control necessary to find that Minute Men staff were borrowed employees.

{¶44} Sabetta also did not come by the knowledge about Hillman's background in the context of any employment with CIB. The loaned servant rule is specifically limited to activities within the confines of the purpose for which the employee is borrowed. Sabetta learned of Hillman's past while engaged in activities for Minute Men, not CIB.

{¶45} Further, while CIB, through Evans, had veto power over a promotion decision, it was likely Minute Men that promoted Hillman to group leader. Evans testified that the normal procedure was for the project manager to inform him of a certain person in mind for promotion, and that Evans would normally agree with that suggestion. Sabetta, the project manager at the time Hillman was promoted, testified similarly. While both men testified they did not promote Hillman, this does not create a material question of fact in this case.

**{¶46}** CIB had no actual or constructive knowledge of Hillman's past, there were no on the job performance issues that would prompt a duty to investigate, and it was not required to conduct a background investigation for the services provided.[4]

**{¶47}** The elements of the tort of negligent hiring, and by extension, negligent promotion, are derived from the Restatement (Second) of Agency, Section 213. *Ruta*, 69 Ohio St.2d at 69, 430 N.E.2d 935, quoting *Ruta*, 6th Dist. Erie No. E-80-39, 1980 Ohio App. LEXIS 12410, at 7, quoting Restatement of the Law 2d, Agency, Section 213, Comment d (1958). Interpreting this section, the Supreme Court of Colorado held:

> We endorse the proposition that where an employer hires a person for a job requiring frequent contact with members of the public, or involving close contact with particular persons as a result of a special relationship between such persons and the employer, the employer's duty of reasonable care is not satisfied by a mere review of personal data disclosed by the applicant on a job application form or during a personal interview. However, in the absence of circumstances antecedently giving the employer reason to believe that the job applicant, by reason of some attribute of character or prior conduct, would constitute an undue risk of harm to members of the public with whom the applicant will be in frequent contact or to particular persons standing in a special relationship to the employer and with whom the applicant will have close contact, we decline to impose upon the employer the duty to obtain and review official records of an applicant's criminal history.

*Connes v. Molalla Transport Sys., Inc.*, 831 P.2d 1316, 1322 (Colo.1992). *See also Strauss v. Hotel Continental Co.*, 610 S.W.2d 109 (Mo.App.1980).

---

[4] An employer has a similar duty of reasonable care in the selection of its employees or independent contractors. *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 257, 553 N.E.2d 1038 (1990).

**{¶48}** This informs our review of the case. Even if Andrew is correct that it was actually CIB that promoted Hillman to supervisor, there was no prior warning that exposed the degree of risk that would result from his promotion. Hillman had shown himself to be a good worker with no indication that he posed a risk to others. Sabetta testified that Hillman was never violent toward anyone at work, but that he got in a few verbal altercations where he used profanity.[5]

**{¶49}** Andrew also argues that CIB should have required Minute Men to conduct background checks on the individuals that Minute Men provided under the agreement for the provision of services. However, in Ohio there is no duty for an employer to conduct a background check in all cases. "Although it may be prudent for an employer to conduct a criminal background check for employment applicants, it is not required by law." *Saavedra v. Mikado Japanese Steak House & Sushi*, 10th Dist. Franklin No. 14AP-757, 2015-Ohio-778, ¶ 12, citing *Rozzi v. Star Personnel Servs., Inc.,* 12th Dist. Butler No. CA2006-07-162, 2007-Ohio-2555, ¶ 11. *See also Steppe*, 136 Ohio App.3d at 467, 737 N.E.2d 58, citing *Kuhn v. Youlten*, 118 Ohio App.3d 168, 177, 692 N.E.2d 226 (8th Dist.1997). This is especially true where the position at issue involves general labor in a supervised, open environment with little or no contact between employees and the public. *See Garcia v. Duffy*, 492 So.2d 435, 441-442 (Fla.App.1986); *Ponticas v. K.M.S. Invests.*, 331 N.W.2d 907, 913 (Minn.1983); *Connes* at 1322.

---

[5] Andrew stresses Sabetta's testimony that he could see violence in Hillman, but all this testimony goes to establish is that there were no incidents of physical violence in the workplace prior to the decision to promote Hillman.

**{¶50}** Therefore, the trial court did not err in granting summary judgment in favor of CIB.

### III.   Conclusion

**{¶51}** Minute Men had some degree of knowledge regarding Hillman's past criminal history and participated in or decided to promote him to a position of authority over others.   The extent of that knowledge, the foreseeability of the risk that decision posed to other employees given the extent of that knowledge, and whether that decision proximately caused Michaela's injuries are all material questions for a trier of fact.   CIB had no similar knowledge, nor was it required to investigate the employees Minute Men hired for cleaning services.   The claims against CIB fail as a matter of law.

**{¶52}** Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MARY EILEEN KILBANE, J., CONCURS;

EILEEN A. GALLAGHER, A.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

EILEEN A. GALLAGHER, A.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶53} I concur with the majority's affirmance of the trial court's decision granting summary judgment in favor of CIB. I respectfully dissent, however, from the majority's decision to reverse the granting of summary judgment in favor of Minute Men. I do not agree that there is a cognizable claim for negligent promotion under the undisputed facts of this case.

{¶54} In this case, it is undisputed that Hillman raped and murdered Michaela at an abandoned house on August 20, 2014, three days after they worked together on a cleanup crew at Progressive Field. It is likewise undisputed that Michaela and Hillman left together in her car after they completed their shift on August 17, 2014 and that Michaela socialized with Hillman at a Cleveland casino the following night.

{¶55} I do not agree with the majority that the duty Minute Men owed to Michaela as a temporary cleanup crew worker extended to protecting her from Hillman's criminal conduct, which occurred outside the workplace, after she had been socializing with Hillman days after her employment with Minute Men had ended. Nor do I believe that a reasonable jury could find, under the facts and circumstances here, that any action or omission by Minute Men was a proximate cause of Michaela's death. Although the majority asserts that "the act of promoting Hillman to a position of at least apparent authority over Michaela may have proximately caused her death," there is no evidence in

the record that suggests that the reason Michaela continued to interact and socialize with Hillman after August 17, 2014 had anything to do with her prior employment by Minute Men or that Minute Men had any knowledge of their continued interaction. Michaela's death is a horrific tragedy but it is not one for which I believe Minute Men bears responsibility under Ohio law. Accordingly, I would affirm the trial court's entry of summary judgment in favor of Minute Men.