[Cite as *Smith v. Technology House, Ltd.*, 2019-Ohio-2670.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| BRANDY SMITH, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0080** |
| THE TECHNOLOGY HOUSE, LTD., et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2018 CV 00072.

Judgment: Affirmed in part, reversed in part, and remanded.

*Jeffrey J. Moyle* and *Christopher James Lalak*, 614 West Superior Avenue, Suite 1148, Cleveland, OH 44113 (For Plaintiff-Appellee).

*James O'Connor* and *Brian D. Sullivan*, Reminger Co., L.P.A., 101 West Prospect Avenue, Suite 1400, Cleveland, OH 44115 (For Defendants-Appellants).

MATT LYNCH, J.

{¶1} Defendants-appellants, The Technology House, Ltd. and Bud S. Gear, appeal the Portage County Court of Common Pleas' October 11, 2018 Order Granting Plaintiff's Motion to Compel. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

{¶2} On January 23, 2018, plaintiff-appellee, Brandy Smith, filed a Complaint in the Portage County Court of Common Pleas, against Technology House and Gear, and, on April 9, 2018, a First Amended Complaint raising claims of Sexual Harassment

(Count I), Race Discrimination (Count II), and Retaliation (Count III) pursuant to R.C. Chapter 4112.

{¶3} On April 20, 2018, Technology House and Gear filed their Answer to the First Amended Complaint.

{¶4} On July 30, 2018, Smith filed a Motion to Compel, seeking an order to compel Technology House and Gear to produce the following: "[a] recording of Defendants' counsel's interview of Plaintiff regarding her claims of harassment and discrimination"; "[r]ecordings of interviews taken by Defendants' counsel with Plaintiff's non supervisory co-workers"; "[d]ocuments related to the interview of Plaintiff and the interviews of her co-workers, including any notes taken in connection with [the] same"; "corrected discovery responses to identify Defendants' counsel as [sic] participants in Defendants' investigation of Plaintiff's claims"; and "[n]et worth regarding Defendants so that punitive damages information may be calculated in accordance with R.C. § 2315.21."

{¶5} In support of the Motion, an affidavit sworn to by Smith was submitted to the court, which stated in relevant part:

> 3. While I was working at Defendant Technology House, Defendant Bud Gear approached me and asked me to "have sex in the back," asked me if he could grab my breasts, and would frequently tell me that I was "juicy" and that I "had a nice ass."
>
> 4. On October 30, 2018, I reported Mr. Gear's inappropriate behavior to Nichole Gear (Mr. Gear's daughter), who served as Technology House's Human Resources Manager.
>
> 5. On October 31, 2018, Ms. Gear approached me to inform me that a meeting would be conducted regarding my complaints.
>
> 6. Ms. Gear escorted me to the meeting room. Defendants' counsel Adrian Thompson was present, as was Technology House employee Tracy Brent (who is also Mr. Gear's daughter).

2

7. I excused myself to contact my attorney.

8. I returned to the meeting and informed Mr. Thompson that I was represented by the law firm of Nilges Draher LLC.

9. Mr. Thompson continued questioning me after I informed him I was represented.

10. I believe the interview lasted for approximately one hour on the morning of October 31, 2017, ending at approximately 10 a.m.

11. Mr. Thompson interviewed other non-supervisory employees in connection with the investigation of my complaints, and that Mr. Thompson recorded these conversations as well.

12. I have not been provided with a copy of the recordings of those interviews.

{¶6} On September 17, 2018, Technology House and Gear filed a Brief in Opposition to Plaintiff's Motion to Compel and Motion for Protective Order. In support of the Brief and Motion, an affidavit sworn to by Nichole Gear was submitted to the court, which stated in relevant part:

4. On 10/30/17, Plaintiff Brandy Smith made a complaint to The Technology House alleging that she had experienced sexual harassment.

5. On 10/30/17, on behalf of The Technology House, I retained outside counsel, attorney Adrian D. Thompson of the law firm of Taft Stettinius & Hollister, LLP, with respect to the claims made by Plaintiff Brandy Smith that she had experienced sexual harassment at work.

6. I retained Mr. Thompson to conduct a factual investigation and to provide legal advice, in part, because of the prospect of litigation given the nature of the claims made by Plaintiff Brandy Smith.

7. At the time I retained Mr. Thompson, I believed that, given the nature of the claims made by Plaintiff Brandy Smith, there was the prospect of a lawsuit being filed.

3

8. On 10/31/17, Mr. Thompson conducted an investigation, which included several conversations and interviews with management and hourly employees.

* * *

10. All conversations, interviews, memorandum, and legal advice related to Mr. Thompson's Investigation have been held strictly confidential by The Technology House.

{¶7} On October 9, 2018, Smith filed a Reply Brief in Support of the Motion to Compel and in Opposition to the Motion for Protective Order.

{¶8} On October 11, 2018, the trial court issued an Order Granting Plaintiff's Motion to Compel. Pursuant to Civil Rule 37, the court ordered Technology House and Gear to produce: "all recordings and documents related to defendants' investigation of plaintiff's complaints prior to her termination, including but not limited to recordings of plaintiff and her co-workers"; "all documents requested in plaintiff's requests for documents regarding defendants' net worth"; and "corrected discovery responses fully responsive to plaintiff's interrogatories * * * identify[ing] all individuals who participated in the investigation of plaintiff's complaints, and * * * respond[ing] fully to plaintiff's interrogatories regarding defendants' net worth."

{¶9} On October 18, 2018, Technology House and Gear filed a Notice of Appeal. On appeal, they raise the following assignments of error:

{¶10} "[1.] The trial court incorrectly compelled Technology House to produce privileged information including recordings and documents related to its attorney's investigation of Ms. Smith's sexual harassment complaints."

{¶11} "[2.] The trial court incorrectly compelled Technology House to produce documents regarding Technology House's net worth."

4

{¶12} "[3.] The trial court erred in failing to conduct an in camera review of the compelled discovery."

{¶13} Under the first assignment of error, Technology House and Gear argue that the recordings, documents, notes, correspondence, and legal advice generated by the investigation conducted by counsel into Smith's allegations of sexual harassment are protected by the attorney-client privilege and work-product doctrine.

{¶14} "In general, discovery orders are reviewed under an abuse-of-discretion standard." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996). When the discovery of confidential or privileged information is at issue, however, the reviewing court applies a de novo standard. *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 29; *Schlotterer* at ¶ 13.

{¶15} "It is well-settled that the burden of showing that testimony sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude it." *Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976); *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 660-661, 635 N.E.2d 331 (1994) ("the mere relation of attorney and client does not raise a presumption of confidentiality of all communications made between them").

{¶16} In general, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Civ.R. 26(B).

{¶17} "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law."

5

*State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18. The statute provides in relevant part that an attorney "shall not testify in certain respects * * * concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client" unless "the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context." R.C. 2317.02(A)(1). The common-law attorney-client privilege "reaches far beyond [the] proscription against testimonial speech" afforded by the statute and "protects against any dissemination of information obtained in the confidential relationship." (Citation omitted.) *Leslie* at ¶ 26.

{¶18} The work-product doctrine "provides a *qualified* privilege protecting the attorney's mental processes in preparation of litigation" and, "as it applies in civil cases in Ohio," is described by Civil Rule 26(B)(3). *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 55-56. "[A] party may obtain discovery of documents, electronically stored information and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney * * *) only upon a showing of good cause therefor." Civ.R. 26(B)(3).

{¶19} Technology House and Gear's claims that their investigation into Smith's allegations is protected by the attorney-client privilege and work-product doctrine rely heavily on the Ohio Supreme Court's decision in *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221.

{¶20} *Toledo Blade* was "an original action for a writ of mandamus to compel a port authority to provide access to both an investigative report prepared by a law firm on behalf of the port authority and the associated documentation reviewed by the attorneys

6

to prepare the report." *Id.* at ¶ 1.  The subject of the investigation was wrongdoing by an administrator.  The port authority of its own accord produced "all Port Authority documents which the attorney reviewed and considered in connection with the underlying investigation, including resolutions, contracts, invoices, financial records, correspondence, and * * * e-mails." *Id.* at ¶ 15.  The port authority refused to produce the investigative report itself, asserting the attorney-client privilege.  The relator countered that "the factual portions of the investigative report are not covered by the attorney-client privilege, because they do not constitute legal advice." *Id.* at ¶ 23.

{¶21} The supreme court rejected the relator's position, recognizing that "most courts that have expressly addressed the issue of whether an attorney's factual investigations are covered by the attorney-client privilege have determined that such investigations may be privileged." *Id.* at ¶ 25.  The attorney-client privilege "does not require the communication to contain purely legal analysis or advice to be privileged. Instead, if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged."  (Citation omitted.) *Id.* at ¶ 27; *Leslie*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, at ¶ 29 ("[t]he privilege applies when legal advice of any kind is sought from the legal advisor in that capacity and the client's confidential communication relates to that purpose"); *also State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 30 (reaffirming *Toledo Blade*'s holding that "an attorney's factual investigation, if incident to or related to any legal advice that the attorney would give on a particular issue, is covered by the privilege").

{¶22} Considered in light of this holding, the trial court's order that Technology House and Gear produce "all recordings and documents related to defendants'

investigation of plaintiff's complaints prior to her termination, including but not limited to recordings of plaintiff and her co-workers" includes material covered by the attorney-client privilege. As asserted in Nichole Gear's affidavit, Technology House retained Attorney Thompson after Smith made allegations of sexual harassment to conduct a factual investigation and render legal advice.

{¶23} It cannot be said, however, that "all recordings and documents related to defendants' investigation" are privileged. The scope of the privilege must be considered in relation to its underlying purpose. "The main purpose behind the attorney-client privilege is to promote '"full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice."'" (Citations omitted.) *Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 16; *Moskovitz*, 69 Ohio St.3d at 660, 635 N.E.2d 331 ("[i]n the modern law, the privilege is founded on the premise that confidences shared in the attorney-client relationship are to remain confidential").

{¶24} Documents and records whose existence preceded a factual investigation or were created independent of such investigation, i.e., independent of any communication between attorney and client, would not be protected by the attorney-client privilege.

> In order for a document to constitute a privileged communication, it is essential that it be brought into being primarily as a communication to the attorney.
>
> Professor Wigmore says: '* * * A document of the client *existing before it was communicated* to the attorney is not within the present privilege so as to be exempt from production. But a *document* which has *come into existence as a communication* to the attorney, being itself a communication, is within the present privilege.

8

*In re Klemann*, 132 Ohio St. 187, 192, 5 N.E.2d 492 (1936); *Nageotte v. Boston Mills Brandywine Ski Resort*, 9th Dist. Summit No. 26563, 2012-Ohio-6102, ¶ 11-12; *Fisher v. United States*, 425 U.S. 391, 403-404, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ("pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice").

{¶25} Also, the identity of persons who participated in the investigation is not covered by the privilege. *Pales v. Fedor*, 2018-Ohio-2056, 113 N.E.3d 1019, ¶ 26 (8th Dist.) ("the fact of consultation and the general nature of the work performed by the attorney are not usually protected by the privilege"); *State v. Hoop*, 134 Ohio App.3d 627, 640, 731 N.E.2d 1177 (12th Dist.1999) ("[t]he identity of a witness is not protected by the attorney-client privilege because witness identity does not belong to a particular party").

{¶26} Finally, the attorney-client privilege does not protect the recording of the interview with Smith as this interview may not properly be said to have occurred within the context of the attorney-client relationship. In the case of a corporate client, Ohio cases have generally held that the privilege extends to communications between counsel and employees of the corporate client. *Leslie*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, at ¶ 22; *MA Equip. Leasing I, L.L.C. v. Tilton*, 2012-Ohio-4668, 980 N.E.2d 1072, ¶ 24 (10th Dist.); *Clapp v. Mueller Elec. Co.*, 162 Ohio App.3d 810, 2005-Ohio-4410, 835 N.E.2d 757, ¶ 53 (8th Dist.); *Bennett v. Roadway Express, Inc.*, 9th Dist. Summit No. 20317, 2001 WL 866261, *14-15. However, "[a]pplication of the attorney-client privilege in the corporate context must be determined on a case-by-case

9

basis." *MA Equip. Leasing* at ¶ 24, citing *Upjohn Co. v. United States*, 449 U.S. 383, 396, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).[1]

**{¶27}** In the present case, Technology House and Gear contend that "the attorney-client privilege extends to all interviews undertaken by its attorney while investigating Ms. Smith's complaints, including the interview of Ms. Smith because she was still employed by Technology House when questioned by the lawyer." Appellants' brief at 13. We disagree. While still an employee of Technology House at the time of her interview, Technology House was already contemplating the prospect of future litigation arising out of Smith's complaints. Indeed, Nichole Gear frankly admitted that it was the prospect of such litigation that prompted her to retain the services of Attorney Thompson. Moreover, Smith had also retained her own counsel prior to the interview and advised Attorney Thompson of her independent representation. In light of the foregoing, Technology House could not reasonably expect that the substance of the interview would have the character of a confidential communication between an attorney and client which underlies the reason for the privilege. At the time of Smith's interview, a de facto adversarial relationship existed between the parties and, therefore, the substance of that interview falls outside the scope of the privilege.

**{¶28}** Smith stresses that Attorney Thompson's questioning of her apart from her retained counsel was unethical. *See* Prof.Cond.R. 4.2 ("[i]n representing a client, a lawyer shall not communicate about the subject of the representation with the person the lawyer knows to be represented by another lawyer in the matter"). A violation of the Rules of Professional Conduct does not, per se, bear on the confidential nature of a

---

1. *Upjohn* is cited by every Ohio case considering the issue of the attorney-client privilege in the corporate context.

10

particular communication and there is no indication that the trial court ordered disclosure as some sort of discovery sanction. The fact that Smith had retained independent representation is relevant to the nature of the communication as indicated above.[2]

{¶29} What we have just written applies to the substance of the Smith interview. Documents or materials recording Attorney Thompson's assessment of the interview would be protected work product. As will be discussed further below, a precise determination as to which documents remain protected is not possible on appeal.

{¶30} Smith argues that any privilege attaching to the information and materials associated with the investigation was "irrevocably waived by Appellants' invocation of the *Faragher/Ellerth* defense." Appellee's brief at 15.

{¶31} The *Faragher/Ellerth* defense is an affirmative defense to claims of sexual harassment derived from the United States Supreme Court cases of *Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Under *Faragher/Ellerth*, "an employer can mitigate or avoid liability by showing (1) that it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided." (Citation omitted.) *Diemer v. Minute Men, Inc.*, 2018-Ohio-1290, 110 N.E.3d 152, ¶ 30 (8th Dist.). In the present case, Technology House and Gear asserted the affirmative defense that "they exercised

---

2. We note a judge's responsibility to perform the duties of the judicial office impartially, competently, and diligently, and, in particular Rule 2.15 of the Ohio Code of Judicial Conduct ("[a] judge having *knowledge* that a lawyer has committed a violation of the Ohio Rules of Professional Conduct that raises a question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the *appropriate authority*").

11

reasonable care to prevent and promptly correct any alleged sexually harassing behavior, and that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by defendants."

{¶32} Although no Ohio court has adopted this position, it has been held in other jurisdictions that the assertion of the *Faragher/Ellerth* defense effects a waiver of any privilege attaching to a party's investigation of the alleged harassment. "When an employer puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation," including "'not only the [investigative] report itself, but [ ] all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation." (Citation omitted.) *Koumoulis v. Independent Fin. Marketing Group, Inc.*, 295 F.R.D. 28, 41 (E.D.N.Y.2013); *Ambrose-Frazier v. Herzing Inc.*, E.D.La. No. 15-1324, 2016 WL 890406, *5 ("[w]hen a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense that is premised at least in part on an internal investigation, the defendant waives the attorney-client privilege and work-product doctrine for all documents created as part of that investigation") (cases cited).

{¶33} The issue of whether Technology House and Gear waived the privilege attaching to Attorney Thompson's investigation by asserting a *Faragher/Ellerth* defense may be resolved by recourse to "[o]rdinary waiver principles" and the "animating maxim that the privilege cannot 'be used as both sword and shield.'" *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir.2018). That is: "when a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." (Citation omitted.) *Id.*

12

Accordingly, courts do not find a waiver of privilege unless a party indicates its reliance on a particular investigation in its assertion of the *Faragher/Ellerth* defense. The "clear majority view" is that the defense must be "premised, **in whole * * * or [in] part**, on the results of an * * * investigation." (Emphasis added.) *Angelone v. Xerox Corp.*, W.D.N.Y. No. 09-CV-6019, 2011 WL 4473534, *2; *Robinson v. Vineyard Vines, LLC*, S.D.N.Y. No. 15 Civ. 4972, 2016 WL 845283, *6 ("if Defendants refer to or rely on the Investigative Documents in asserting a *Faragher/Ellerth* defense in this litigation, then Defendants will waive the privilege and will be required to immediately produce the Investigative Documents"). "This holding aligns with the numerous cases across jurisdictions finding waiver 'when a client asserts reliance on an attorney's advice as an element of a claim or defense,' * * * and the many dozens of cases finding no waiver when no such reliance has occurred." (Citation omitted.) *Itron* at 559 (cases cited).

**{¶34}** In the present case, Technology House and Gear's assertion of the *Faragher/Ellerth* defense does not acknowledge the existence of much less indicate reliance upon Attorney Thompson's investigation. The mere assertion that they exercised "reasonable care to prevent and promptly correct any alleged sexually harassing behavior" does not constitute a waiver of any privilege applicable to the investigation.

**{¶35}** To the extent indicated above, the first assignment of error has merit inasmuch as the trial court's Order Granting the Motion to Compel requires the production of clearly privileged material. Given the record before this court, however, it is impossible to determine precisely which documents are privileged or protected by the work-product doctrine.

{¶36} Civil Rule 26 provides that, "[w]hen information subject to discovery is withheld on a claim that it is privileged * * *, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Civ.R. 26(B)(6)(a). No such description of the documents is before this court.[3] Without a descriptive itemization of the documents at issue, the applicability of the attorney-client privilege or work-product doctrine to a particular document or interrogatory is not possible.

{¶37} Upon remand, the trial court of necessity must either conduct an in camera review of the compelled discovery to determine whether the attorney-client privilege and work-product doctrine exempts them from discovery or require the production of description of the documents sufficient to make such a determination, noting that the following types of materials are not privileged: documents and records whose existence preceded Attorney Thompson's factual investigation or were created independent of that investigation (*supra* at ¶ 24); the identity of persons who participated in the investigation (*supra* at ¶ 25); and any recordings or transcripts of the substance of the interview with Smith (*supra* at ¶ 26-28).

{¶38} To the extent indicated above, the first assignment of error is with merit.

{¶39} Under the second assignment of error, Technology House and Gear claim that the trial court erred by compelling the discovery of evidence regarding their net worth. They argue that evidence of net worth is only potentially relevant when the

---

3. The record indicates that a privilege log may exist, although it has not been filed with the court. In Technology House and Gear's Brief in Opposition to Motion to Compel and Motion for Protective Order, it is asserted that, "upon request to undersigned counsel, a privilege log is being produced to Plaintiff contemporaneously with the filing of this brief." Whether the privilege log was actually produced is not evidenced by the record. Smith makes no reference to such a log in her Reply Brief nor does the trial court in its Order Granting the Motion to Compel.

plaintiff makes a prima facie case for punitive damages. According to Technology House and Gear, "Ms. Smith's amended complaint is completely devoid of any allegations to support a punitive damages claim." Appellants' brief at 22. Smith's Amended Complaint seeks "punitive damages in an amount in excess of $25,000 for violations of Ohio Revised Code § 4112.02 and pursuant to Ohio Revised Code § 4112.99."

{¶40} It is generally recognized in Ohio law that a party's net worth is a relevant consideration in determining the amount of an award of punitive damages. *Wagner v. McDaniels*, 9 Ohio St.3d 184, 459 N.E.2d 561 (1984), paragraph two of the syllabus ("[e]vidence of a defendant's net worth may be considered by the fact-finder in determining appropriate punitive damages"); *Svoboda v. Clear Channel Communications, Inc.*, 6th Dist. Lucas No. L-02-1149, 2003-Ohio-6201, ¶ 23 ("[b]ecause net worth is relevant evidence in assessing a claim for punitive damages, we find that the trial court did not abuse its discretion in ordering the discovery of the salary and income information of Schaffer, Tischler, and LeFebvre"); R.C. 2315.21(D)(2)(b) ("[i]f the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of * * * ten percent of the employer's or individual's net worth").

{¶41} Discovery is generally permissible "regarding any matter * * * which is relevant to the subject matter involved in the pending action." Civ.R. 26(B)(1). Technology House and Gear cite no authority for the proposition that a prima facie case is necessary (or even how it is to be pled) before a party is entitled to discovery regarding another party's net worth. *Tschantz v. Ferguson*, 97 Ohio App.3d 693, 716, 647 N.E.2d 507 (8th Dist.1994), cited by Technology House and Gear, stands for the

15

proposition that, "though evidence of a party's net worth is admissible to be considered by a jury in assessing a punitive damages award, it is not required evidence," and it is not an abuse of discretion for a trial court to grant "a protective order in favor of [a party] with regard to the furnishing of personal financial information." Although the argument was raised in *Tschantz* that the party seeking discovery "did not make out a *prima facie* case of a legal right to punitive damages," the court of appeals did not resolve that issue. *Id.*; *Svoboda* at ¶ 21 (although "[t]he defendant had argued that Tschantz had failed to demonstrate a prima facie case for punitive damages[,] * * * the Eighth Appellate District simply held that the trial court did not abuse its discretion in granting a protective order").

{¶42} In the absence of any compelling reason not to allow the discovery regarding Technology House and Gear's net worth, we find no abuse of discretion in ordering its discovery. However, the trial court is instructed on remand to enter a protective order preventing Smith from divulging any information regarding Technology House and Gear's net worth to third parties without prior authorization from the court.

{¶43} The second assignment of error is without merit.

{¶44} In their third assignment of error, Technology House and Gear argue that the trial court erred by not conducting "an in camera review to determine if a privilege applies or if the information sought is relevant." Appellants' brief at 22. For the reasons set forth under the first assignment of error, we agree that an in camera inspection of the compelled discovery (or recourse to a descriptive itemization of the material) is necessary to the applicability of the attorney-client privilege and work-product doctrine (although, arguably, the fault for this lies with the parties rather than the court).

{¶45} The third assignment of error is with merit.

16

{¶46} For the foregoing reasons, the Portage County Court of Common Pleas' Order Granting Plaintiff's Motion to Compel is affirmed in part and reversed in part and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the parties equally.

THOMAS R. WRIGHT, P.J.,

TIMOTHY P. CANNON, J.,

concur.